CASE NO. 25-5046

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff/Appellee,*

v.

FABIAN COBOS CARPENA,
*Defendant/Appellant.*

On Appeal from the United States District Court
for the Northern District of Oklahoma

*The Honorable Sara E. Hill*
*United States District Judge*
Case No. 24-CR-173-SEH

**RESPONSE BRIEF OF THE UNITED STATES**
*Oral argument is not requested*
*There are no attachments to this brief*

Clinton J. Johnson
United States Attorney
Northern District of Oklahoma

Elliot Anderson, OBA # 21098
Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119-1013
918.382.2700
elliot.anderson@usdoj.gov

*Attorneys for the United States of America*

December 18, 2025

## Table of Contents

Table of Authorities ................................................................................ iii

Statement of Prior or Related Appeals ............................................. 1

Statement of Jurisdiction ................................................................. 1

Issue Presented for Appeal................................................................ 1

Statement of the Case ....................................................................... 1

Summary of the Argument ................................................................ 4

Argument............................................................................................ 5

    I.     The district court did not abuse its discretion when it ruled that Cobos Carpena could not prove that an imminent, uninterrupted threat of death or serious bodily injury forced him to remain illegally in the United States for more than ten years................................................. 5

    A. Record Reference................................................................. 5

    B.  Standard of Review................................................................ 5

    C. Cobos Carpena could not prove an imminent threat, or a well-founded fear of such a threat, that prevented him from complying with the law for ten years ...................................................................... 6

    II.    The district court's finding that Cobos Carpena had not taken his first available opportunity to comply with the law was not clearly erroneous ................................................................... 10

Conclusion........................................................................................ 12

Statement Regarding Oral Argument ............................................. 12

Certificate of Compliance ............................................................... 14

i

Certificate of Service ................................................................... 14

# TABLE OF AUTHORITIES

## Federal Cases

*United States v. Al-Rekabi*, 454 F.3d 1113 (10th Cir. 2006) ..................... 7, 10–11

*United States v. Aria-Quijada*, 926 F.3d 1257 (10th Cir. 2019)............. 5–8, 10–12

*United States v. Bailey*, 444 U.S. 394 (1980)...................................................... 6

*United States v. Meraz-Valeta*, 26 F.3d 992 (10th Cir. 1994).............................. 7

*United States v. Portillo-Madrid*, 292 F. App'x 746 (10th Cir. 2008) (unpublished)

...................................................................................................... 8, 11–12

*United States v. Portillo-Vega*, 478 F.3d 1194 (10th Cir. 2007).............. 5–8, 10, 12

*United States v. Salvidar-Munoz*, 439 F. App'x 730 (10th Cir. 2011)

(unpublished)...................................................................................8–10

## Federal Statutes

8 U.S.C. § 1326 ..................................................................................... 2

18 U.S.C. § 3231 ................................................................................... 1

18 U.S.C. § 3742 ................................................................................... 1

28 U.S.C. § 1291 ................................................................................... 1

**Statement of Prior or Related Appeals**

There are no prior or related appeals.

**Statement of Jurisdiction**

In 2024, a grand jury charged Fabian Cobos Carpena with illegally reentering the United States after a previous removal. (R. Vol. I at 17). The district court had jurisdiction under 18 U.S.C. § 3231. Cobos Carpena entered a conditional guilty plea, reserving the issue presented in this appeal. (*Id.* at 97). This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

**Issue Presented for Appeal**

Did the district court abuse its discretion when it ruled that Cobos Carpena could not prove at trial that duress prevented him from complying with federal immigration law for more than ten years?

**Statement of the Case**

Fabian Cobos Carpena, a citizen and national of Mexico, was convicted of burglary in Oklahoma and removed from the United States in June 2013. (R. Vol. II at 10–12). That same year, he returned to the United States without authorization. (R. Vol. I at 47–48). For the next decade, Cobos Carpena lived

1

in Oklahoma, until he was arrested for domestic assault and battery in April 2024. (*Id.* at 48–50; R. Vol. II at 10). In June 2024, a federal grand jury charged Cobos Carpena with illegal re-entry, in violation of 8 U.S.C. § 1326. (R. Vol. I at 17).

Before trial, Cobos Carpena announced his intention to assert a duress defense, and he requested a corresponding jury instruction. (*Id.* at 18). The United States moved to exclude evidence of duress or coercion. (*Id.* at 20–26). The district court held an evidentiary hearing, and Cobos Carpena submitted his proposed evidence by written proffer. (*Id.* at 34–86). Cobos Carpena claimed he was kidnapped in Mexico in 2010 and taken to a woman named Rosanna Torres in Oklahoma, who threatened him with death if he did not obey her every command. (*Id.* at 38, 46–47). He alleged that, for the next three years, he was Ms. Torres's constant prisoner and "had to do everything to please her and make her happy so she wouldn't kill me." (*Id.* at 46–47).

He further alleged that, after his 2013 removal to Mexico, "Rosanna's men" immediately kidnapped him and returned him to her in the United States. (*Id.* at 47–48). He claimed Torres kept him under her daily control from 2013 to 2023. (*Id.* at 48–49). He said Torres beat him, deprived him of clothing, stole his truck, and threatened him with deportation to Mexico. (*Id.* at 48–49, 67).

2

Other parts of the record showed that during this same period, he visited with his family in Tulsa, worked full time, and bought a truck. (*Id.* at 48–50, 53–55; R. Vol. II at 13).

Cobos Carpena alleged that in 2023, Torres told him that he "wasn't of use to her anymore," and he fled her apartment. (R. Vol. I at 49). At first, Cobos Carpena lived with his sister, and later he moved in with a girlfriend. (*Id.* at 50–51). Over the following year, Cobos Carpena filed two police reports against Torres, obtained a protective order against her in state court, sought domestic abuse victim counseling, and began working on an application for a T visa. (*Id.* at 50–51, 65–82).[1] He did not, however, surrender to immigration authorities or attempt to return to Mexico. (R. Vol. III at 12–21). After living independently in Tulsa for about a year, Cobos Carpena was arrested on a domestic violence warrant, and ultimately charged in this case. (R. Vol. II at 10; R. Vol. III at 50–51).

At the conclusion of the hearing, the district court denied Cobos Carpena's request for a duress instruction, finding that he could not prove that an unceasing, imminent threat of death or serious bodily injury prevented him

---

[1] Cobos Carpena's T visa application was formally filed after his arrest in April 2024. (R. Vol. III at 19).

from complying with the law from 2013 to 2024. (R. Vol. III at 59–61). The court also found that he had failed to take advantage of opportunities during that period to surrender to immigration authorities or leave the United States. (R. Vol. III at 61–63).

After the district court rejected his duress defense, Cobos Carpena entered a conditional guilty plea, and the court sentenced him to time served. (R. Vol. I at 110–11). This appeal followed. (R. Vol. I at 117).

## Summary of the Argument

The district court did not abuse its discretion in excluding the duress defense, because Cobos Carpena failed to prove by a preponderance of the evidence that he was forced to enter the United States without authorization and remain in the country illegally for more than ten years. The evidence presented at the pretrial hearing did not show that an imminent threat of death or serious bodily injury deprived Cobos Carpena of all legal courses of action for the duration of his criminal conduct. Rather, it showed that Cobos Carpena had multiple opportunities either to turn himself in to immigration authorities or to return to Mexico and instead he chose to remain in the United States. This Court should affirm.

## Argument

**I. The district court did not abuse its discretion when it ruled that Cobos Carpena could not prove that an imminent, uninterrupted threat of death or serious bodily injury forced him to remain illegally in the United States for more than ten years.**

### A. Record Reference

Cobos Carpena asked the district court to instruct the jury on duress, and the government filed a motion to exclude evidence relating to that defense. (R. Vol. I at 20–26, 27–32). After an evidentiary hearing, the district court denied Cobos Carpena's request. (*Id.* at 55–63).

### B. Standard of Review

This Court reviews a district court's denial of a duress defense for abuse of discretion. *United States v. Portillo-Vega*, 478 F.3d 1194, 1197 (10th Cir. 2007). A defendant claiming duress must prove, by a preponderance of the evidence, that he had no alternative to violating the law because of (1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat would be carried out, and (3) the absence of any reasonable opportunity to escape the threatened harm. *Id.* A defendant "does not have an absolute right to present a duress defense to the jury." *United States v. Arias-Quijada*, 926 F.3d 1257, 1259 (10th Cir. 2019). If a defendant cannot prove any one of those

5

elements, the court may exclude the duress defense, and "the trial court and jury need not be burdened with testimony supporting the other elements of the defense." *United States v. Bailey*, 444 U.S. 394, 416 (1980).

Because illegal re-entry is a continuing offense, Cobos Carpena had to establish the elements of duress "through the entirety of his criminal conduct." *Arias-Quijada*, 926 F.3d at 1260. Once the alleged source of duress loses its "coercive force," a defendant must surrender to the authorities and comply with the law. *Portillo-Vega*, 478 F.3d at 1201. If he fails to take such an opportunity "at any time before the defendant surrenders or is apprehended, he is not entitled to present the duress defense to the jury." *Arias-Quijada*, 926 F.3d at 1260; *see Bailey*, 444 U.S. at 415 (the duty to surrender promptly "is an indispensable element of the defense of duress or necessity"). Here, the district court applied the correct standard and acted within its discretion when it declined to allow Cobos Carpena to present a duress defense.

### C. Cobos Carpena could not prove an imminent threat, or a well-founded fear of such a threat, that prevented him from complying with the law for ten years.

The district court correctly ruled that Cobos Carpena had not proved he was "under threat such that it prevented him from complying with the law" from 2013 to 2024. (R. Vol. III at 12). Where alleged threats are fleeting or episodic, or distant in place or time, they are not "imminent" for purposes of

6

duress. *See Arias-Quijada*, 926 F.3d at 1259; *Portillo-Vega*, 478 F.3d at 1198–1201. Likewise, the threat must be objectively serious—a defendant's "subjective belief" that he has no choice but to break the law is insufficient. *United States v. Meraz-Valeta*, 26 F.3d 992, 995 (10th Cir. 1994) (overruled in part on other grounds). If a purported crisis permits "a selection from among several solutions, some of which did not involve criminal acts, the necessity defense must fail." *Id.* (citation omitted); *see also Portillo-Vega*, 478 F.3d at 1197 & n.4 (noting that the defenses of necessity and duress are functionally equivalent), *citing United States v. Al-Rekabi*, 454 F.3d 1113, 1117 (10th Cir. 2006) (urging the "parsimonious use" of justification instructions). Here, the district court considered Cobos Carpena's allegations that he had been abducted in Mexico in 2013 and threatened or abused while he lived and worked in Oklahoma, and found them insufficient evidence of ongoing, uninterrupted duress. Thus, it properly held that no coercive force prevented Cobos Carpena from complying with the law for more than ten years.

Because reasonable, non-criminal options to breaking the law are commonly available, this Court routinely excludes duress defenses in illegal re-entry cases. In *Portillo-Vega*, the defendant claimed that he entered the United States only because Mexican police abducted him at the border and threatened

to kill him if he did not leave Mexico. 478 F.3d at 1200. This Court rejected his duress defense, noting that he could have pursued other, legal options, including traveling to other parts of Mexico or seeking immediate assistance upon entering the United States. *Id.* at 1200–02.

Likewise, in *Arias-Quijada*, the defendant claimed he had no choice but to enter the United States illegally because he had been assaulted by a gang in El Salvador three years earlier. 926 F.3d at 1259. This Court upheld the denial of a duress defense because the threats were several years old and the defendant could have migrated to another country, attempted to enter the United States legally, or surrendered to immigration officials and reported the threats. *Id.*; *see United States v. Saldivar-Munoz*, 439 F. App'x. 730, 735–36 (10th Cir. 2011) (unpublished) (defendant threatened by gangs in his home city could have relocated to other places in Mexico); *United States v. Portillo-Madrid*, 292 F. App'x. 746, 748, 750–51 (10th Cir. 2008) (unpublished) (defendant threatened in El Salvador six years earlier did not show he had "no reasonable legal alternative" but to remain in the United States without authorization).

For similar reasons, Cobos Carpena failed to establish that an imminent threat of death or serious bodily injury deprived him of all reasonable, legal alternatives to remaining illegally in the United States. Cobos Carpena

8

admitted that, by April of 2023, he had escaped Rosanna Torres's control and had begun living independently. (R. Vol. III at 57). The following year, Cobos Carpena obtained a protective order against Torres, filed two police reports against her, moved in with a new girlfriend, sought counseling as a victim of domestic abuse, worked a full-time job, and began applying for a T visa. (R. Vol. I at 49–51; R. Vol. II at 13). By no later than April 2023, any allegedly paralyzing threat had dissipated and Cobos Carpena was at liberty to act independently of Torres—and to comply with the law.

Moreover, the district court found that Cobos Carpena could have taken the same actions to protect himself "in any of the preceding years," before his alleged escape from Torres in 2023. (R. Vol. III at 63). The court also noted that Cobos Carpena could have complied with the law at any time by leaving Torres and returning to Mexico. (*Id.* at 60–62). Cobos Carpena's subjective belief that "Rosanna's men" might harm him upon his return to Mexico did not constitute a threat of imminent death or serious bodily injury. *See Salvidar-Munoz*, 439 F. App'x at 735 (future possibility of gang violence in some other part of Mexico "insufficient to satisfy the imminent-threat requirement of a necessity or duress defense"); *see also id.* (rejecting the argument that defendant's entire home country was so dangerous as to make return

9

impossible); *Portillo-Vega*, 478 F.3d at 1200 (same). Here, the district court found it objectively unreasonable to believe that "the entirety of the North American continent is patrolled by Torres's armed men," such that Cobos Carpena could not go anywhere in Mexico safely. (R. Vol. III at 62).

A duress defense "does not arise from a choice of several courses of action." *United States v. Al-Rekabi*, 454 F.3d 1113, 1122 (10th Cir. 2006) (cleaned up). Cobos Carpena did not face an imminent threat that cut off all legal courses of action for more than ten years, and therefore the district court did not abuse its discretion in denying a duress instruction.

## II.    The district court's finding that Cobos Carpena had not taken his first available opportunity to comply with the law was not clearly erroneous.

For similar reasons, the district court held that Cobos Carpena had not taken his first available opportunity to comply with the law. This finding of fact was not clearly erroneous and is entitled to deference on appeal. *See Arias-Quijada*, 926 F.3d at 1260. In April 2023, Cobos Carpena separated from Torres, moved in with his girlfriend, obtained a protective order, and sought domestic abuse assistance. (R. Vol. III at 62). The district court noted that Cobos Carpena could have taken these steps at any point "throughout the ten

10

years he lived illegally in the United States." (*Id.* at 63). Likewise, he could have exercised his independence and surrendered to immigration authorities or returned to Mexico before he moved out of Torres's house in 2023. (*Id.* at 62–63). His failure to do so is fatal to his duress claim. *See Portillo-Madrid*, 292 F. App'x at 751 (denying duress defense where defendant failed "to justify his continued offensive conduct once the claimed duress had lost its coercive force").[2]

"Demanding a prompt and appropriate remedial response" to claimed duress is "a useful tool in measuring the bona fides of a claimant." *Al-Rekabi*, 454 F.3d at 1124. Here, the district court found it "nearly indisputable" that Cobos Carpena had ample opportunity to separate from Torres and comply with the law, either after 2023 or during the previous ten years. Indeed, this Court has held much shorter periods of time to be fatal to a duress defense in illegal re-entry cases. *See Arias-Quijada*, 926 F.3d at 1260–61 (defendant had

---

[2] Cobos Carpena stated in an application for a state court protective order that Torres had threatened hm with deportation. (Aplt. Br. at 39–40; R. Vol. I at 67). The district court found this was not a bona fide effort to surrender to immigration authorities or otherwise comply with the law. (R. Vol. III at 41–42, 61–63). To the contrary, his efforts to secure a protective order demonstrated a desire to *avoid* Torres's threats of deportation and continue living illegally in the United States. As the district court correctly noted, a defendant is not excused from a continuing violation of immigration law "if he just tells one law enforcement officer that he doesn't have papers." (*Id.* at 42).

three years after illegal re-entry to surrender to law enforcement and failed to do so); *Portillo Vega*, 478 F.3d at 1201 (failure to surrender over a period of three months was sufficient grounds to deny duress instruction); *Portillo-Madrid*, 292 F. App'x. at 750 (no duress where defendant failed to surrender for six years). Because Cobos Carpena had ample opportunity to comply with the law and failed to do so, he was not entitled to present a duress defense to the jury.

## Conclusion

Because Cobos Carpena failed to introduce sufficient evidence to support any element of a duress defense, the district court did not abuse its discretion in denying him the opportunity to argue duress. This Court should therefore affirm the decision of the district court.

## Statement Regarding Oral Argument

The United States does not request oral argument.

Respectfully submitted,
CLINTON J. JOHNSON
United States Attorney

 /s/ *Elliot P. Anderson*
Elliot P. Anderson, OBA # 21098
Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119-1013
918.382.2700
elliot.anderson@usdoj.gov

13

## Certificate of Compliance with Type-Volume Limit

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,668 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Calisto MT.

*/s/ Elliot P. Anderson*
Elliot P. Anderson
Assistant United States Attorney


## Certificate of Service

I certify that on December 18, 2025, I electronically transmitted the foregoing to the Clerk of the Court using the ECF System for filing, which will send notification of that filing to the following ECF registrant:

William Dixon Lunn, Jr. (wlunn@peoplepc.com)
Counsel for Defendant/Appellant

*/s/ Elliot P. Anderson*
Elliot P. Anderson
Assistant United States Attorney

14