CASE NO. 25-5046

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| FABIAN COBOS CARPENA, | ) |
| | ) |
| Appellant. | ) |

_____

On Appeal from the United States District Court
for the Northern District of Oklahoma
The Honorable Sara E. Hill
United States District Judge
D.C. No. 24-CR-173-SEH

**APPELLANT'S REPLY BRIEF**
_____

WILLIAM D. LUNN, OBA #5566
320 S. Boston, Ste. 1130
Tulsa, Oklahoma 74103
(918) 582-9977
wlunn@peoplepc.com
Attorney for Appellant
Fabian Cobos Carpena

Oral Argument is requested.

January, 2026

# TABLE OF CONTENTS

*Summary of the Government's Response*…………………...…………………1

*Cases Cited to Support Appellant's Defense*…………………………………..6

*Did Appellant Face an Imminent Threat for Ten Years?*.............................8

*Did Appellant Have a Well-Founded Fear of Harm or Death?*......................9

*Did Appellant Notify Law Enforcement Authorities
   in a Reasonable Manner?*.........................................................................11

CONCLUSION...................................................................15

STATEMENT AS TO ORAL ARGUMENT.................................................15

CERTIFICATE OF COMPLIANCE…………………………………17

CERTIFICATE OF DIGITAL SUBMISSIONS………….…….…………18

CERTIFICATE OF SERVICE……………………………………18

# TABLE OF AUTHORITIES

**Cases**:

*Dixon v. United States,* 548 U.S. 1, 126 S.Ct. 2437 (2006)………………..14

*United States v. Al-Rekabi,* 454 F.3d 1113 (10th Cir. 2006)……..…………11

*United States v. Arias-Quijada,* 926 F.3d 1257 (10th Cir. 2019)………..…2, 6

*United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 629 (1980)……………..…2

*United States v. Contento-Pachon,* 723 F.2d 691 (9th Cir. 1984)…...7, 10, 11

*United States v. Dixon,* 901 F.3d 1170 (10th Cir. 2018)………………..…6

*United States v. Haney,* 287 F.3d 1266 (10th Cir. 2002)……………..…...7

*United States v. Hernandez-Hernandez,* 519 F.3d 1236
    (10th Cir. 2008)……………………………………….……..………..14

*United States v. Martinez-Morel,* 118 F.3d 710 (10th Cir. 1997)…………..14

*United States v. Meraz-Valeta,* 26 F.3d 992 (10th Cir. 1994)………..……4, 8

*United States v. Portillo-Madrid,* 292 F. App'x 746
    (10th Cir. 2008)……………………………….…….3, 6, 8, 11, 12

*United States v. Portillo-Vega,* 478 F.3d 1194 (10th Cir. 2007)……....2, 6, 10

*United States v. Salvidar-Munoz,* 439 F. App'x 730 (10th Cir. 2011).......4, 10

*United States v. Scott,* 901 F.2d 871 (10th Cir. 1990)………...…………7, 11

*Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920 (1967)………………...14

**<u>Statutes and Rules</u>**:

8 U.S.C. 1326……………………………………………………………15

Fabian Cobos Carpena, by undersigned counsel, submits the following reply brief, and states to the Court as follows:

*Summary of the Government's Response*

The government's position in this illegal reentry case, where Appellant argued he was entitled to instructions on a duress defense, is simple: any person in the country for an extended period of months, and certainly for a period of years, is *never* entitled to a duress defense instruction. At some point in time during that prolonged period, the government reasons, a defendant surely must have an opportunity to turn himself over to immigration authorities to be deported to some country where he or she almost certainly can find a place of safety. The government presents six illegal reentry cases, many commonly-cited in appeals in such cases, to support its position. The government makes no effort whatsoever to respond to any of the arguments raised, or cases cited, by Appellant contained on pages 35-42 in its opening brief, that argue how Appellant's case is distinguished from these six cases.

1

The government's six illegal reentry cases cited in its answer brief are as follows:

(1) *United States v. Arias-Quijada,* 926 F.3d 1257 (10th Cir. 2019). The defendant claimed he had been tortured in El Salvador, then reentered the United States after removal and stayed for three years, during which time he made no effort to contact law enforcement officials. Addressed in Appellant's opening brief at page 29.

(2) *United States v. Portillo-Vega,* 478 F.3d 1194 (10th Cir. 2007). The defendant reentered from Mexico to escape retribution from drug cartels, but he had been in the United States for three months without any attempt to contact law enforcement. He had worked in a car wash for several months in Tijuana after he had been removed and had checked a box on his removal form in which he indicated he actually wanted to return to Mexico. See pg. 29 of opening brief.

(3) *United States v. Bailey,* 444 U.S. 394, 100 S. Ct. 629 (1980). Prisoners in the District of Columbia jail escaped from

2

beatings, threats of death and trash fires inside the jail, but, after their escape, stayed out three and a half months without contacting law enforcement about their whereabouts or making any claims of duress arising from their prior incarceration.  See pg. 29 of opening brief.

(4) *United States v. Portillo-Madrid,* 292 F. App'x 746 (10th Cir. 2008).  Defendant reentered the United States after deportation following an aggravated felony, where he had cooperated with law enforcement.  He reentered the United States because he claimed that gangs would murder him for having given information to law enforcement while he was in the United States that would hurt the gangs' criminal operations.  At the time of his arrest, defendant had been in the United States for six years, but, the holding noted, he had "never contacted any law enforcement officers or immigration officials" after he reentered.  *Id.,* at 751.  At the time of his arrest, he did not inform the officers that he was afraid to return to El Salvador.

3

(5) *United States v. Salvidar-Munoz,* 439 F. App'x 730 (10th Cir. 2011) (unpublished).  Defendant, following his deportation to Mexico after a false personation conviction, claimed he had been approached by gangs who told him to run illegal drugs for them over the border.  He stayed in the United States for at least 22 months without contacting law enforcement. After the defendant left Mexico, one of defendant's brothers was beaten and kidnapped, which caused his father to move 40 miles away to another town where he was safe from harassment by gangs.  The defendant feared, if he were deported, that he might have to join some other gang in another Mexican city.

(6) *United States v. Meraz-Valeta,* 26 F.3d 992 (10th Cir. 1994). Defendant was deported to Mexico for possession with intent to distribute marijuana in the United States.  In Mexico, he secured a good job.  Defendant left his wife and children in the United States.  The wife soon exhibited signs of schizophrenia and the defendant feared for the welfare of his children in the wife's care.  The defendant believed he had

no way to protect his children, even though he had a sister who lived in the same town where the children lived.  It is not apparent how long the defendant had been in the United States before he was arrested, but it could have been only a matter of days.

The government claimed in its answer brief, among various arguments, that Appellant "did not surrender to immigration authorities or attempt to return to Mexico," even though he "had multiple opportunities" to do so.  See pages 3-4 of govt.'s answer brief.  Any concerns about threats of death or serious bodily harm by Appellant, the government argued, "must be objectively serious" and that "a defendant's 'subjective belief' that he has no choice but to break the law is insufficient."  *Id.,* pg. 7.  The government then claimed Appellant's fear of harm if he returned to Mexico from the men his tormentor Torres used there was nothing but a 'subjective belief,' *id.,* at pg. 9, and that the district court's finding was correct that it was "objectively unreasonable to believe that 'the entirety of the North American continent is controlled by Torres' armed men.'"  *Id.,* at pg 10.  In particular, the

5

government insisted it was impossible for defendant to have faced

"an imminent threat that cut off all legal courses of action for

more than ten years." *Id.,* at 10.  The government insisted the

district court's holding was correct that Appellant "could have

taken these steps at any point 'throughout the ten years he lived

illegally in the United States.'" *Id.,* at 10-11.  To fortify its

argument, the government simply cited three cases above where

other defendants over a long period of time had failed to contact

law enforcement after their illegal reentries. *Id.,* citing *Arias-Quijada* (three years), *Portillo-Vega* (three months) and *Portillo-Madrid* (six years).

*Cases Cited to Support Appellant's Defense*

At no point in its answer brief did the government ever address

case law cited by Appellant to support his assertion that duress

defense instructions should have been given.  A district court is

required to give full credence to the defendant's testimony in

evaluating whether duress instructions should be given.  *United States v. Dixon,* 901 F.3d 1170, 1178 (10th Cir. 2018).  The

defendant's pretrial offer must be reviewed "in the light most

6

favorable to the defendant." *Id.* Appellant cited *United States v.*

*Haney,* 287 F.3d 1266, 1269 (10th Cir. 2002), which held that a

defendant's claim that he endured serious threats of imminent

death from other inmates and gave credible testimony about his

inability to contact the prison warden because being labeled as a

snitch would have placed him in even greater peril "created a jury

issue." "A defendant is entitled to jury instruction on any theory

of defense finding support in the evidence and the law. Failure to

do so instruct is reversible error." *Id.* He also cited, *United States*

*v. Contento-Pachon,* 723 F.2d 691, 694 (9th Cir. 1984), which held,

"A jury might find" for Contento-Pachon to pack his family and

possessions and flee "was not a reasonable avenue of escape." He

also cited *United States v. Scott,* 901 F.2d 871, 874 (10th Cir. 1990),

which noted, "The defendant" in *Contento-Pachon* "was in frequent

contact with the person making the threats and was informed he

would be under constant surveillance."

The government ignored all of this case law in its answer brief,

instead, doing nothing more than make its claim, designed to have

duress claims rejected in all illegal reentry cases, that over enough

7

time any illegal alien will have the opportunity to find safety from a threat of death or serious bodily injury somewhere on the North American continent, whether it is somewhere else in the United States, somewhere in the defendant's country of origin, or somewhere in some other country other than the United States.

How, then, can Appellant's case be distinguished from the arguments and case law cited by the government?  The answer, in far greater detail, has already been written in Appellant's opening brief at pages 35-42, which the government refused to address.  But, for this reply brief, a shorter response should be appropriate.

*Did Appellant face an imminent threat for ten years?*  None of the cases cited by the government involved defendants who faced the kind of imminent threat of serious physical harm that Appellant endured for ten years as Torres' young male slave.  In all the cases cited by the government, the defendants reentered the United States for anywhere from three days (*Meraz-Valeta*) to six years (*Portillo-Madrid),* during which time the defendants faced no imminent threat of harm.  They were all free to do whatever they pleased.  In contrast, for ten years, as a victim of

8

human trafficking, Appellant faced immediate threats of death or serious bodily injury.  Appellant introduced credible evidence that his teeth had been knocked out and he suffered bruising all over his body repeatedly.  He was forced to commit humiliating acts such as walk outside in his underwear, if he wished to avoid even harsher retribution from Torres.  Even after he fled Torres' immediate presence, he was under constant surveillance.  His sister's house was riddled with bullets.  When he walked down the street, Torres' men found him and drew guns threatening his life. Torres herself tried to run him over.  The district court committed an abuse of discretion in finding, simply because of the passage of time, that there must have been some day when he could have escaped.  The district court was, instead, required to review the evidence in the light most favorable to the defendant.  The evidence established that, with this uneducated, Spanish-speaking defendant, there was no such time.

*Did Appellant have a well-grounded fear of harm or death?*

The perception of danger must be viewed from the position of the defendant in order to satisfy the second element of whether a

duress defense should be given.  See *Contento-Pachon* ("the trier of fact" should decide "whether one in Contento-Pachon's position might believe that some of the Bogata police were paid informants for the traffickers").  It may well be that some defendants, such as the man in *Salvidar-Munoz,* might have a father who lived in a "safe" town in Mexico where a defendant might return.  But *Salvidar-Munoz* does not support the government's argument or the district court's findings that Mexico must have a safe place for everyone.

Appellant's experience with his return to Mexico in 2013 following his deportation by Immigration and Naturalization Services had been altogether different.  Appellant had been apprehended, beaten daily for three weeks, and threatened by Torres' men with death once he crossed the border into Mexico. After his tormentors were satisfied Appellant had not revealed Torres' human trafficking network to INS authorities, Appellant was taken back across the border, where Torres was waiting for him to escort him back to Oklahoma.  Unlike the defendants in the cases cited by the government such as *Portilla-Vega* or

10

*Portillo-Madrid,* Appellant never failed to notify authorities about his fear of having to return to Mexico. Appellant was still young, spoke only Spanish, and had few resources, like the defendant in *Contento-Pachon,* that would have allowed him to pack up and leave Torres and get to another part of the United States. Appellant established that Torres operated a highly-sophisticated network of drug and human trafficking that involved substantial territory in both Mexico and the United States, where she was a threat to him. From Appellant's "position," there "was not a reasonable avenue of escape." *Id.,* 723 F.2d at 694. He had daily contact with his tormentors and would have reasonably believed, like the defendant in *Contento-Pachon,* that he was under constant surveillance. *Scott,* 901 F.2d at 874. Again, as with the first element, Appellant presented sufficient evidence, taken in the light most favorable to the defendant, to establish this second element to entitle him to the duress defense.

*Did Appellant notify law enforcement in a reasonable manner?*

In each of the six cases cited by the government (as well as a seventh, a non-illegal reentry case, *United States v. Al-Rekabi,* 454

11

F.3d 1113 (10th Cir. 2006), where a felon defendant hid a gun in a heating duct to get it out of his young son's hands), none of the defendants reported their presence in the United States to law enforcement authorities. In contrast, at the very first reasonable opportunity he had after he was able to escape from Torres' domineering and threatening presence less than a month after he crawled away from her house, Appellant showed up at the Tulsa County Courthouse in response to Torres' application for a protective order. He told law enforcement there about the torment he had endured from Torres for the past ten years.

Even the government's own case, *Portillo-Madrid,* places no requirement on an illegal alien, as the government suggests, to go to immigration authorities to report duress and seek asylum. The alien can contact "any law enforcement officers or immigration officials" to report his situation. *Id.,* 292 F. App'x at 751. This is what Appellant did. Appellant had good reason not to go to Immigration and Naturalization Services. His one experience with them had resulted in his deportation and subsequent torture

12

by Torres' men after he was taken back across the border to Mexico.

Appellant did not show up once before law enforcement officials and then disappear. He went four times during 2024 to seek protection from Torres. During that time, she continued to torment him by shooting bullets into his sister's house and having her men threaten him with guns as he walked down the street. He also contacted the INS hotline and sought legal counsel so that he could seek asylum from his perceived threat of more torture if he were returned to Mexico. These were all reasonable steps for a person who had endured the years of torment that Appellant had to take. When taken in the light most favorable to Appellant, his reporting Torres' torture to law enforcement presented sufficient evidence to satisfy the third prong required to present a duress defense.

Appellant was denied his Constitutional right to present his defense. The evidence as to all three elements was both "relevant and material" and "was of such an exculpatory nature that its

13

exclusion can be said to affect a trial's outcome." *United States v. Hernandez-Hernandez,* 519 F.3d 1236, 1239 (10th Cir. 2008). Because illegal reentry cases are "really matters of strict liability," *United States v. Matinez-Morel,* 118 F.3d 710, 716 (10th Cir. 1997), the district court's refusal to grant Appellant's request to provide instructions on the duress defense to the jury made it impossible for Appellant to defend himself in a criminal trial, "a keystone" of the American legal system. *Washington v. Texas,* 388 U.S. 14, 18-19, 87 S.Ct. 1920 (1967). He took the only reasonable legal alternative, which was to enter a conditional plea and have this court evaluate whether the facts he presented satisfied the three elements he was required to establish by a preponderance of the evidence to receive a duress defense. *Dixon,* 548 U.S. 1, 17, 126 S.Ct. 2437, 2447 (2006).

The district court's position, advanced by the government, that an illegal alien can go anywhere on the North American continent to avoid imminent danger reasonably perceived, was both speculative and arbitrary. There are exceptions. In *Hernandez-Hernandez,* 519 F.3d at 1241, this court held, "While most border

14

crossings are surely intentional in the (Section) 1326 sense, neither can we deny that the trafficking of human beings against their will across international borders is a reality". This case that involves the sordid business of human trafficking is such an exception. The district's denial of Appellant's request for a duress instruction should be reversed.

## CONCLUSION

The district court committed an abuse of discretion in denying Appellant's motion for duress jury instructions and in granting the government's motion in limine. Sufficient relevant evidence, taken in the light most favorable to Appellant's case, supported all three elements required to establish a defendant's right to proceed with a duress defense. Appellant's case should be remanded based on the evidence presented, with instructions to the district court to permit Appellant to present his proposed duress instructions as his defense to a jury.

## STATEMENT AS TO ORAL ARGUMENT

Because this case involves important Fifth and Sixth Amendment rights for a defendant to present a defense to a jury,

15

the case justifies oral argument.

Respectfully submitted,

_/s/_William D. Lunn_____
William D. Lunn, OBA 5566
320 S. Boston, Suite 1130
Tulsa, Oklahoma 74103
918/582-9977
Attorney for Appellant
 Fabian Cobos Carpena

## CERTIFICATE OF COMPLIANCE

Please complete one of the sections:

**Section 1. Word Count**

As required by Fed. R. App.P.32(a)(7)(c), I certify that this brief is proportionally spaced and contains 2,753 words.

Complete one of the following:

_X___ I relied on my word processor to obtain the count and it is Microsoft Word 2024.

_____ I counted five characters per word, counting all characters including citations and numerals.

**Section 2. Line count**

My brief was prepared in a monospaced typeface and contains ___ lines of text.

    I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

> _/s/_William D. Lunn_____
> William D. Lunn
> Attorney for the Appellant
> Fabian Cobos Carpena

## CERTIFICATE OF DIGITAL SUBMISSIONS

I, William D. Lunn, attest to the following:

(1) All required privacy redactions have been made pursuant to Tenth Circuit Rule 25.5;

(2) any required paper copies to be submitted to the court are exact copies of the version submitted electronically; and

(3) the electronic submission was scanned for viruses with the most recent version of a commercial virus scanning program, McAfee 2023, and is free of viruses.

_/s/_William D. Lunn_____
William D. Lunn

## CERTIFICATE OF SERVICE

I, William D. Lunn, on this 13th day of January, 2026, sent a copy electronically via the Tenth Circuit filing system of Appellant's Reply Brief to Appellee's attorney, Elliot Anderson, United States Attorney's Office, 110 W. 7th Street, Suite 300, Tulsa, OK  74119.

_/s/_William D. Lunn_____
William D. Lunn

18